**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD L. BARTELL and MARY
JO BARTELL, husband and wife;

      Plaintiffs - Appellants,

v.

AURORA PUBLIC SCHOOLS, a
public school district organized under
the laws of Colorado;

      Defendant - Appellee.

No. 00-1162

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 98-WY-1542)**

---

Theodore P. Coates, Stewart Shortridge & Coates, Englewood, Colorado, for the
Plaintiffs-Appellants.

Catherine A. Tallerico (Timothy P. Schimberg with her on the brief), Fowler
Schimberg & Flanagan, P.C., Denver, Colorado, for the Defendant-Appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, and **REAVLEY**,[*] Senior
Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

    [*] The Honorable Thomas M. Reavley, United States Court of Appeals for
the Fifth Circuit, sitting by designation.

Plaintiff-appellants Richard Bartell and his wife filed a 42 U.S.C. § 1983 action against his former employer, defendant-appellee Aurora Public Schools ("APS"), alleging violations of his due process and equal protection rights, as well as pendent state law claims, stemming from APS's investigation of sexual harassment charges against Bartell. The district court granted summary judgment for APS in all respects. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Bartell worked at APS from January 1977 to July 1997, serving as a Supervisor of Environmental and Support Services during the time period relevant to this appeal. On July 1, 1996, Bartell met with a subordinate, Rita Lesser, in Bartell's office. Although the exact circumstances of the meeting are disputed, Bartell admits he raised his voice, shoved a drawer closed, stated, "We're done," and turned off the lights while Lesser was still sitting in his office. (Appellee's App. at 34–35 (Richard L. Bartel Dep.).) After the meeting, Lesser complained to Bartell's supervisor, James Bittle. Lesser told Bittle about the incident in Bartell's office and claimed that it "was not the first incident of th[at] type." (Appellants' Br. at 5.) She also accused Bartell of: treating her, and the other

women in his department, less favorably than he treated male APS employees; being abusive towards all employees, especially female employees; denying her permission to obtain needed training; and physically bumping her.

As a result of these allegations, Bittle made a written report of Lesser's complaints and forwarded it to the APS Human Resources Department, including Robert Adams, the Assistant Superintendent of Human Resources. No one filled out the complaint form referenced in APS's sexual discrimination and harassment policies. Adams began an investigation into the charges, and Bartell was notified of the charges and the investigation on July 3, 1996. On July 18, 1996, Adams and two other APS officials met with Bartell, informed Bartell of the allegations against him, and gave Bartell a chance to respond. Bartell admitted to several of the allegations.

On July 24, 1996, Adams again met with Bartell, informing Bartell that he was being placed on "administrative leave with full pay and benefits" and that his right to enter school property was suspended pending further investigation and APS's resolution of the allegations. (Appellee's App. at 71.) Adams indicated that "placing [Bartell] on administrative leave [was] not any determination of guilt or wrongdoing." (Id.) APS's employment policies do not mention "administrative leave," though they state that "[a]n employee may be suspended with or without pay pending investigation of a complaint filed against the

-3-

employee." (Appellants' App. at 129.) Although the parties dispute the point, Bartell claims that at some time, either at the July 24 meeting or soon thereafter, Adams promised to update Bartell about the investigation in two weeks but did not do so. Meanwhile, APS investigated the charges against Bartell by interviewing approximately ten people, including Bartell and Lesser.

Bartell retained counsel, who sent a letter to APS in mid-September 1996 stating that "until I have had a chance to further investigate the charges and allegations that led to [APS's] actions against my client, there should be no changes made to Mr. Bartell's status in any way (including compensation, benefits or any other aspects of his employment status)." (Appellee's App. at 89.) APS officials sent a reply letter in early October explaining in detail the evidence against Bartell. The letter also requested any information that Bartell or his counsel wanted APS to consider before APS made its final decision and asked that the information be provided within ten days of the letter's date because APS "wish[ed] to reach a decision soon." (Id. at 67.) Despite receiving a second letter requesting a response in early December, neither Bartell nor his counsel provided APS with any information beyond verbal assertions that Bartell had become emotionally disabled and would be unable to attend any further meetings with APS. At some point during late 1996 or early 1997 Bartell filed a claim for disability benefits with the Public Employees' Retirement Association (PERA).

Throughout this time APS honored the demand of Bartell's counsel and did not change Bartell's status, keeping him on administrative leave with pay.

On January 13, 1997, APS changed Bartell's status from paid administrative leave to paid sick leave. Two days later, Bartell filed a notice of intent to sue. In July 1997 PERA determined that Bartell was disabled and granted him permanent disability retirement benefits. At that time, APS cancelled his employee benefits and terminated him from the APS payroll.

Bartell filed this § 1983 suit alleging equal protection and due process violations by APS. He and his wife also brought pendent Colorado state law claims for breach of contract and promissory estoppel. The district court granted APS's motion for summary judgment on all claims.

## II

Counsel for APS, pointing out that Bartell's counsel failed to file an opening brief within the time period set forth in Fed. R. App. P. 31(a)(1) and 10th Cir. R. 31.1(A)(1), filed a motion to dismiss the appeal. Failing to file a brief within the periods prescribed by the appellate rules is not a jurisdictional defect and "[i]t is . . . always within this court's discretion to permit the late filing of a brief for good cause." Hutchinson v. Pfeil, 211 F.3d 515, 517 n.1 (10th Cir. 2000) (citing Fed. R. App. P. 26(b)). For that reason, we do not grant motions to dismiss for failure to follow Fed. R. App. P. 31(a)(1). See 10th Cir. R.

27.2(A)(1) (stating that a party may file a motion to dismiss an appeal only on the bases of lack of jurisdiction, supervening change in law or mootness, or need for additional district court proceedings); Mullen v. Household Bank-Federal Sav. Bank, 867 F.2d 586, 588 (10th Cir. 1989) (stating that "[w]e do not grant motions to dismiss" "for failure to follow the Federal Rules of Appellate Procedure").

### III

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. English v. Colo. Dep't of Corr., 248 F.3d 1002, 1007 (10th Cir. 2001). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id. (quotation omitted). Summary judgment is appropriate only if the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). To successfully oppose summary judgment, the nonmoving party must show that there is a "genuine" issue of fact, which requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**A**

Bartell begins his attack on the summary judgment ruling by contending

that "the District Court did not view the facts in the light most favorable to the

non-moving party" and "accepted [APS's] version of the facts . . . even though

such facts were disputed." (Appellants' Br. at 11.) Bartell first claims the district

court erred in determining that Bartell voluntarily retired instead of being

terminated by APS. Other than bald assertions that this issue has "far-reaching

ramifications for much of [Bartell's] case" (Appellants' Br. at 13; Appellants'

Reply Br. at 8) and a vague citation to the district court's ruling, Bartell provides

no argument why determining whether he retired or was terminated is a material

fact.[1] Certainly Bartell cannot argue he had an absolute right to work for APS.

As a result, even assuming he was constructively discharged, the inquiry under

either his equal protection or due process claims turns not on whether Bartell was

discharged, but on the events leading up to his termination: why (e.g., was he the

---

[1] We remind appellants' counsel that "[i]t is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal." Am. Airlines v. Christensen, 967 F.2d 410, 415 n.8 (10th Cir. 1992); see also Fed. R. App. P. 28(a)(9)(A) (requiring that an appellant's brief include the "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies").

target of discrimination?) and how (e.g., was he afforded due process?) APS acted.

Bartell next points to changes in APS's sexual harassment and discrimination policy made some two years after the incidents giving rise to this lawsuit. While the changes themselves are undisputed, Bartell believes the fact that APS revised its policies is tantamount to an admission by APS that policies in effect during Bartell's investigation "did not provide equal protection" and "were discriminatory on their face." (Appellants' Br. at 13, 16.) The changes cited are: (1) a clarification that sexual harassment can occur for same sex harassment; (2) changing some instances of the pronouns "she" and "her" to "s/he"; (3) changing the word "will" to "may" with regard to filing a written complaint form.

The first two changes are irrelevant—this case contains no allegations of same sex harassment. Under both the old and revised policies the allegations against Bartell constitute sexual discrimination. Additionally, the pre-amendment version of the policies refers to protecting the "working environment of all employees" (Appellants' App. at 121 (emphasis added)) and use gender-neutral language in many instances, implying that the old policies applied regardless of an employee's gender. We simply see nothing untoward in revising policies to make them explicitly gender neutral, especially in light of Oncale v. Sundowner

Offshore Services, Inc., 523 U.S. 75 (1998) (holding that same sex sexual harassment is actionable).

The final change to the policies provides Bartell an avenue for discussing his angst stemming from APS's failure to fill out the complaint form referenced in APS's sexual harassment and discrimination policies. We agree with the district court that Bartell's argument on this point "elevates form over substance." (Appellants' App. at 358.) Bartell's supervisor wrote a lengthy memorandum detailing the allegations against Bartell and included all of the important information called for by the form.[2]

Bartell's final factual contention is that the district court misconstrued the fact that APS placed him on "administrative leave" in the absence of express authorization for that status in the APS personnel policies. APS policies mention suspension with or without pay as proper during an investigation of alleged employee misconduct. Bartell fails to explain why there is any meaningful distinction between "administrative leave" with pay and "suspension" with pay.

---

[2] We see no merit in Bartell's argument that the incorrect deposition testimony of two APS officials regarding which version of the sexual discrimination and harassment policies was in effect raises an inference of "'dissembling to cover up a discriminatory purpose.'" (Appellants' Br. at 16 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).) Reeves noted that "a party's dishonesty about a material fact" may be "affirmative evidence of guilt." 530 U.S. at 147 (internal quotation omitted). As explained in the text, the changes in APS's sexual discrimination and harassment policies are entirely benign, and therefore do not constitute "material facts" in this case.

To the extent that Bartell claims that "administrative leave" status left him without recourse to APS's grievance procedures, the record shows that Bartell was given ample opportunity to present his version of events and respond to the allegations against him:  APS officials twice met with Bartell in person and twice solicited—with no response from Bartell—evidence or arguments that Bartell or his counsel wanted APS to consider.

**B**

Although Bartell originally premised his equal protection claims on a number of theories, on appeal he raises only his claim that he was the victim of "selective, purposeful discrimination by government officials who harbor animosity towards the victim." (Appellants' Br. at 19 (citing Esmail v. Macrane, 53 F.3d 176, 178–80 (7th Cir. 1995)).)  In rejecting that equal protection theory, the district court held the Tenth Circuit has not

> recognized an equal protection cause of action for individual victims
> of selective, purposeful discrimination by government officials who
> harbor animosity towards the victim. . . .  Under the circumstances of
> this case, and without any indication that the Tenth Circuit would act
> to adopt such a theory, the Court declines to hold that the Equal
> Protection Clause is violated where an otherwise legitimate
> disciplinary policy is applied out of malice or bad intent.

(Appellants' App. at 359 (citing Norton v. Vill. of Corrales, 103 F.3d 928, 933–34 (10th Cir. 1996)) (further citation omitted).)  The district court concluded

that because Bartell was not a member of a suspect class and was not alleging the violation of a fundamental right, his "selective discrimination" theory must fail.

Bartell contends the district court's reliance on Norton was "misplaced." (Appellants' Br. at 20.) We agree. Norton considered whether the "selective discrimination" theory was sufficiently well established to withstand a qualified immunity defense. See 103 F.3d at 934 ("Under the circumstances we hold that any such equal protection right is not well enough established to hold the individual defendants to knowledge of it. Thus the individual defendants enjoy qualified immunity on this claim."). There is no qualified immunity issue in this case, and the question is not whether Bartell's equal protection theory is well established, but simply whether it is a viable legal theory. We believe it is. For instance, in Buckley Construction, Inc. v. Shawnee Civic & Cultural Development Authority, 933 F.2d 853, 859 (10th Cir. 1991), we cited Snowden v. Hughes, 321 U.S. 1, 8 (1944), for the proposition that the "equal protection clause could be invoked where there is unequal application of a statute if intentional discrimination is shown." Other cases, though not binding precedent, likewise indicate that Bartell's equal protection theory is viable. See Vanderhurst v. Colo. Mountain Coll. Dist., 16 F. Supp. 2d 1297, 1300–01 (D. Colo. 1998) ("[T]he Equal Protection Clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the

-11-

plaintiff alleges an element of intentional or purposeful discrimination so as to invoke the clause to protect an individual victim." (internal quotation omitted)); Smith v. E. N.M. Med. Ctr., Nos. 94-2213, 94-2241, 1995 WL 749712, at *8 (10th Cir. Dec. 19, 1995) (reviewing cases and holding that "in addition to shielding victims from discriminatory treatment of them as members of an identified class, the Equal Protection Clause affords protection to an individual injured by 'intentional or purposeful discrimination,' without identification of a class" (citing Snowden, 321 U.S. at 8)).

We also note that the Supreme Court recently stated, "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (quotation omitted). While that case does not reach the more specific theory at issue here, "subjective ill will" on the part of government officials, Village of Willowbrook does hold that plaintiffs need not allege they were part of a suspect class or implicate a fundamental right to state a claim under the Equal Protection Clause. Id. at 565.

Under the equal protection theory urged by Bartell, he must prove that he was singled out for persecution due to some animosity on the part of APS. To do

so, he must show that "the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' [Bartell] for reasons wholly unrelated to any legitimate state objective." Esmail, 53 F.3d at 180 (7th Cir. 1995). As with any equal protection claim, Bartell must also demonstrate that he was treated "differently than another who is similarly situated." Buckley, 933 F.3d at 859 (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)); see also Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981) ("[T]he essence of the equal protection requirement is that the state treat all those similarly situated similarly.").

Bartell's equal protection claim fails, however, because it rests on nothing more than bare assertions of differential treatment that, even if true, are insufficient to show a spiteful effort to "get" him. APS was presented with colorable allegations of sexual discrimination by a credible complainant. As the district court noted, "No one, not even Mr. Bartell, has put forth evidence showing that Ms. Lesser lacks credibility." (Appellants' App. at 357.) In light of these allegations, APS was obligated by its procedures to conduct an investigation. (See id. at 122 ("If complaints are made . . . [t]he District will then promptly investigate the allegations . . . .").) That investigation turned up additional evidence against Bartell. His counsel requested that Bartell's status remain unchanged, and then refused to have any further participation in APS's

efforts to resolve the case until notifying APS that Bartell would be suing. There simply is no concrete evidence of a "campaign of official harassment directed against him out of sheer malice." Esmail, 53 F.3d at 179.

**C**

In the context of this case, Bartell's procedural due process claim requires that he show two things: (1) a protected property interest and (2) an appropriate level of process. See Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

We need not decide whether APS's policies and guidelines were sufficient to establish a property interest because even assuming they do, Bartell has not shown that he was denied due process. Bartell relies solely on the fact that APS placed him on "administrative leave," a term not included in APS's policies, as the basis for his due process claim. As discussed above, we find no merit in Bartell's arguments on this point, especially his contention that he was denied a means to challenge the allegations against him.

**IV**

Bartell contends that the district court erred in dismissing with prejudice his state law claims for promissory estoppel and breach of contract after granting summary judgment on the federal claims. "[W]e will reverse a district court's decision to exercise jurisdiction over pendent state claims only when there is

abuse of discretion." Sullivan v. Scoular Grain Co., 930 F.2d 798, 803 (10th Cir. 1991) (citation omitted).

The essence of Bartell's argument is that his state law claims involve novel, complex, or evolving areas of Colorado law. In the interests of comity, such claims should be dismissed by the federal court without prejudice to allow re-filing in state court and initial consideration by the state's judiciary. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997) (holding that remand to state court is appropriate where a federal ruling would constitute "a guess or uncertain prediction"). The flaw in Bartell's argument is that there is nothing novel about his state law claims, which are premised on the holding in a fourteen-year-old Colorado Supreme Court case. See Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 711–12 (Colo. 1987) (holding that an at-will employee "may be able to enforce the termination procedures in an employee manual" under either "ordinary contract principles" or promissory estoppel). Acknowledging Keenan's age, Bartell argues in his Reply Brief that the law is unclear as to public employers. This is plainly wrong as Keenan has been applied not only to public employers, but to a school district employer—exactly the situation in this case. See Adams County Sch. Dist. No. 50 v. Dickey, 791 P.2d 688, 693 (Colo. 1990) (quoting Keenan). The district

-15-

court did not abuse its discretion in retaining jurisdiction of Bartell's state law claims.

As to the substance of these claims, Bartell asserts, citing Keenan, that APS's employee handbook created an implied contract requiring APS to follow its policies and procedures and that APS breached this contract by deviating from them. The alleged deviations constituting breach are APS's failure to: (1) file the sexual harassment complaint form; (2) suspend Bartell instead of placing him on administrative leave; and (3) complete its investigation in a timely manner. The first two allegations are meritless for the reasons discussed above, and the third fails because Bartell cannot complain about the speed of the investigation when his counsel instructed APS to take no further action and then refused to participate in APS's resolution of the matter.

Bartell's promissory estoppel claim is that he reasonably relied on the statement by an APS official that he would "get back to the Bartell's [sic] in two weeks" regarding the investigation. (Appellants' Br. at 30 (citing Appellants' App. at 366).) When APS failed to do so, "Bartell's health collapsed." (Id. at 31.) Bartell's status was the same before and after the "promise"—administrative leave with pay. That, along with Bartell's failure to provide any evidence that the "promise" "induce[d] action or forebearance," Restatement (Second) of Contracts § 90 (1979), demonstrates the hollowness of this claim. At bottom, it is nothing

more than an attempt to recover for the tort of emotional distress cloaked in the language of contract law.

**V**

The judgment of the district court is **AFFIRMED**.