**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL MARINO a/k/a Mike
Marino, and DANETTE MARINO,

        Plaintiffs-Appellants,

v.

SPRAGUE MAYGER, NANCY
MAYGER a/k/a Niky Mayger,
FRANCIS JOHN HIEMER a/k/a Frank
Hiemer, GENE HILL, individually and
as former SHERIFF OF MONTROSE
COUNTY, WARREN WATERMAN,
individually and as SHERIFF OF
MONTROSE COUNTY and former
Lieutenant Patrol Commander of
Montrose County Sheriff's
Department, GREG HILER,
individually and as Investigations
Lieutenant for the Montrose County
Sheriff's Department, and
MONTROSE COUNTY SHERIFF'S
DEPARTMENT,

        Defendants-Appellees.

No. 02-1345
District of Colorado
(D.C. No. 98-S-2386 (PAC))

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This case is about a neighborhood conflict that disintegrated into violence. Plaintiffs Michael and Danette Marino claim that three of their neighbors and three members of the Montrose County, Colorado Sheriff's Department (MCSD) violated their constitutional rights by conspiring to drive the Marinos from their rural property after a prolonged dispute over the administration of an irrigation ditch erupted into violence. The Marinos brought a 42 U.S.C. § 1983 (1996) action against the MCSD, two former Montrose County sheriffs and a sheriff deputy, and state tort claims against three neighbors. After extensive briefing, a magistrate judge found (1) that the Marinos failed to state a claim against MCSD and the private defendants, Sprague Mayger, Nancy Mayger, and Francis Hiemer, and (2) that qualified immunity barred suit against Gene Hill (former Sheriff of Montrose County), Warren Waterman (current Sheriff and former MCSD deputy), and Greg Hiler (former MCSD deputy) (collectively the "sheriff defendants"). The district court accepted the magistrate judge's recommendation and dismissed the Marinos' action in its entirety. Our jurisdiction is based on 28 U.S.C. § 1291. Finding no federal constitutional violations, we conclude that the district court did not err in granting dismissal.

We affirm.

## I. BACKGROUND

In 1995, Michael and Danette Marino moved to Colorado and purchased some acreage in a rural Montrose County subdivision. Soon after the Marinos began constructing their home, they developed an acrimonious relationship with their neighbors, Sprague and Nancy Mayger to the south and Francis Hiemer to the southeast. (I App. at 115) The Maygers and Hiemer are long-time residents of the subdivision as well as friends. (*Id.* at 161)

The subdivision in question receives water from the West Canal, an irrigation ditch that runs along the subdivision's western border. (*Id.* at 115, 162) The subdivision's residents, including the parties to this appeal, are responsible for the ditch's upkeep and administration. The same head gate on the ditch regulates water flow to a smaller, lateral ditch that delivers water to both the Marino and Mayger properties. This lateral irrigation ditch flows through the Marinos' property to reach the Maygers'. (*Id.* at 162) Because the ditch's head gate is on the Marinos' property, the Maygers are entitled to use an irrigation easement on both sides of the ditch to access the head gate and perform ditch maintenance. (*Id.*)

In 1996, after quarreling with the Marinos about other property-related matters, Sprague Mayger and Francis Hiemer unilaterally appointed themselves the subdivision's "irrigation committee" and informed the Marinos that the Marinos would not be receiving their full allotment of monthly irrigation water. (*Id.*) The

3

Marinos responded by filing suit in Montrose County District Court. In September 1997, the state court entered permanent restraining orders against the Maygers and Hiemer, directing them to remain at least ten yards away from the Marinos at all times. (*Id*. at 38–45) Then, in October 1997, the Marinos secured a judicial declaration of their water rights. (*Id*. at 46) The court ruled that the Marinos were entitled to receive their full share of irrigation water and, further, limited the private defendants' use of the ditch easement to "irrigation purposes." (*Id*.) The court's order also required the Maygers and Hiemer to give the Marinos prior notice before crossing the easement. (*Id*.)

According to the Marinos' second amended complaint, Sprague Mayger and Francis Hiemer violated the restraining orders on several occasions during the ensuing months. The Marinos also claim that MCSD deputies refused to enforce the terms of the court orders. On one occasion, Deputy Warren Waterman allowed Hiemer to dig a utility ditch across the front of the Marinos' property, and threatened to arrest Michael Marino when he came outside his house to protest. The Marinos met with Sheriff Gene Hill to discuss the situation, but Sheriff Hill apparently refused to take any remedial action regarding enforcement of the orders.

In addition, the Marinos' complaint alleges that MCSD aligned itself with the Maygers and Hiemer. They point out that Mayger and Hiemer met with Sheriff Hill and MCSD deputies multiple times during this period. In this regard, the complaint

4

alleges that Hiemer and the Maygers did everything Sheriff Hill advised with regard to the hostile situation.[1] The Marinos also note as evidence of MCSD's alignment with the private defendants that Sheriff Hill issued Mayger a concealed weapons permit during this tense period.

On April 5, 1998, the feud erupted into violence. At approximately 4:00 p.m., Mayger notified Michael Marino that he would be using the ditch easement to access the head gate. When he and Hiemer came onto the Marinos' property, Marino began videotaping them. Mayger and Hiemer turned on the irrigation water and then began walking back toward the Maygers' property. As they passed Marino, Mayger hit him in the face with the handle of an irrigation shovel, knocking his glasses to the ground but not causing any apparent injury.

Three hours later, Mayger and Hiemer returned to check the flow of water in the ditch, and Marino began videotaping them again. When they passed by Marino this time, Hiemer struck him violently in the head with the shovel, knocking him unconscious and smashing the video camera in the process. They left Marino lying on the ground, bleeding, and returned to the Maygers' residence.

---

[1] This allegation is based on testimony given during the hearing on Sprague Mayger's motion to have his restraining order lifted. Deputy Waterman stated that "[e]ver since this got started, they [Mayger and Hiemer] were the ones to come and contact us in regards to anything going on and ask for advice. And they would pretty much do whatever we asked them to do." (I 170) Sprague Mayger testified: "we had asked [Sheriff Hill's] direction and guidance and what he wanted us to do with regard to this difficult issue. And we followed everything that he said." (*Id.*)

5

After witnessing the attack on her husband, Danette Marino ran to the house and called 911. MCSD deputies and an ambulance arrived a short time later. Meanwhile, Hiemer called Deputy Waterman from the Maygers' residence and told him about the attack. Hiemer was later taken to MCSD by a sheriff's deputy, questioned by Waterman and Sheriff Hill, and charged with first degree assault before he was released.

MCSD deputies conducted a preliminary investigation of the crime scene that same night. They recovered several pieces of the broken video camera but could not locate the portion containing the tape. Deputy Greg Hiler conducted MCSD's official investigation into the assault. As part of his investigation, Hiler obtained a search warrant for the Marinos' residence, stating in the accompanying affidavit that he believed the remainder of the video camera was in the Marinos' residence. After the search of the Marinos' house failed to turn up evidence of the camera, Hiler obtained the private defendants' consent to search their homes. Neither the video camera nor the tape of the attack was ever found. Deputy Hiler did not seize the shovel used in the assault until October 1998, and he failed to preserve the tape of Danette Marino's 911 call.

According to the Marinos, Francis Hiemer and Deputy Waterman had been close friends for several years before the assault, and Sprague Mayger developed a personal relationship with Waterman after the dispute with the Marinos began. The

6

Marinos also point out that Waterman announced his candidacy for Montrose County Sheriff two days after the assault, and that Hiemer hosted a political function for Waterman at his home a few weeks later.

Following these events, a Montrose County jury convicted Hiemer of first degree assault and he was sentenced to 10 years in prison. The Marinos brought this 42 U.S.C. § 1983 action with pendant state law claims against Francis Hiemer, the Maygers, MCSD, and the sheriff defendants in their individual and official capacities. The Marinos allege that the sheriff defendants conspired with the Maygers and Hiemer to drive them out the community and in the process created the danger that Hiemer would assault Michael Marino. They also maintain that certain actions of the sheriff defendants, both before the assault and in the course of the investigation, violated their constitutional and civil rights and that MCSD policy or custom was the moving force behind the constitutional deprivations.

In a comprehensive recommendation, a United States Magistrate Judge determined that the Marinos' second amended complaint failed to state a claim against the private defendants and MCSD, and that the individual sheriff defendants were entitled to qualified immunity. The district court accepted the magistrate judge's recommendation and dismissed the Marinos' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court also dismissed the pendent state law tort claims.

## II. DISCUSSION

### A. Standard of Review

Whether plaintiffs have stated a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is a question of law this court reviews de novo, applying the same standards as the district court. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for relief. *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations," *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976), and all reasonable inferences must be resolved in the plaintiff's favor. *Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997) (citations omitted). A court may not grant a 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton*, 173 F.3d at 1236 (quotations and citation omitted).

### B. Qualified Immunity

To state a cause of action under § 1983, a plaintiff "must allege both the

deprivation of a federal right and that the alleged action was taken under color of state law."[2] *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998) (quotation omitted). The Marinos' second amended complaint alleges that the individual sheriff defendants conspired with the private defendants to violate various constitutional rights. Specifically, the Marinos assert violations of their rights (1) to equal protection of the laws, (2) to be free from physical abuse, assault, battery and serious bodily injury, (3) to be free from unreasonable searches, and (4) to due process of law.

In response, the sheriff defendants assert the defense of qualified immunity. Once a defendant raises qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has alleged a violation of federal law. *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).[3] If the answer is

---

[2] 42 U.S.C. § 1983 provides, as relevant here,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[3] In reviewing plaintiffs' allegations, we are mindful that we no longer apply a "heightened pleading" standard to plaintiffs complaint, as the magistrate judge did in her recommendation. *See Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001). Rather, we review the complaint under the traditional standards applicable to a motion to dismiss. *Id.* at 917; *see also Ruiz v. McDonnell*, 299

(continued...)

9

"yes," then the court must decide whether the right was clearly established when the alleged violation occurred. *Id.*; *see also Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although the very conduct in question need not have been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* If a plaintiff fails to demonstrate that a defendant's conduct violated the law, then we need not reach the additional question of whether the law was clearly established. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.,* 341 F.3d 1197, 1200 (10th Cir. 2003).

We recently explained the degree of specificity required of prior cases to clearly establish a constitutional violation for qualified immunity purposes. In *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), we noted that the Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730 (2002), "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair

---

[3](...continued)
F.3d 1173, 1181 n.3 (10th Cir. 2002).

notice that the described conduct was unconstitutional."[4] *Pierce* further explained

that, under the fair notice standard, "[t]he degree of specificity required from prior

case law depends in part on the character of the challenged conduct. The more

obviously egregious the conduct in light of prevailing constitutional principles, the

less specificity is required from prior case law to clearly establish the violation."

*Id.* (citing *Vineyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002)).

Thus, to summarize, the sheriff defendants are entitled to qualified immunity

unless the Marinos can show a violation of a constitutional right and that the law

regarding that right was clearly established at the time the violation took place.

With these standards in mind, we proceed to analyze whether the sheriff defendants

are entitled to qualified immunity on the Marinos' claims.

---

[4] *Pierce* quoted the following relevant language from *Hope*:

> [O]fficials can still be on notice that their conduct
> violates established law even in novel factual
> circumstances. Indeed, in [*United States v. Lanier*, 520
> U.S. 259 (1997)], we expressly rejected a requirement
> that previous cases be "fundamentally similar."
> Although earlier cases involving "fundamentally
> similar" facts can provide especially strong support for a
> conclusion that the law is clearly established, they are
> not necessary to such a finding. . . . [T]he salient
> question . . . is whether the state of the law [at the time
> of the conduct] gave respondents fair warning that their
> alleged treatment of [plaintiff] was unconstitutional.

359 F.3d at 1298.

### 1. Equal Protection

The Marinos contend that their second amended complaint made out a cognizable Fourteenth Amendment equal protection claim. According to the Marinos, defendants Waterman and Hill violated their right to equal protection of the laws by refusing to enforce the restraining orders against Francis Hiemer and Sprague Mayger, an omission they attribute to the personal animosity the sheriff defendants harbor toward them. Relying on *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), they argue that the law has been well established that an individual's Fourteenth Amendment equal protection rights are violated by state action that is motivated by a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *See* Aplt. Opening Br. at 43. We construe this argument as a "class of one" equal protection claim, i.e., a claim that the government has intentionally treated the Marinos differently from other similarly situated citizens.

"The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). Ordinarily the Equal Protection Clause is applied to claims of class-based discrimination. *See Campbell v. Buckley*, 203 F.3d 738, 747 n.61 and

12

accompanying text (10th Cir. 2000) (citing cases).  However, in recent years, courts have expanded the concept to include claims of selective discrimination against individuals.

The Supreme Court has stated that "equal protection claims [may be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Olech*, 528 U.S. at 564 (internal quotation and citations omitted).  This circuit recognized *Olech* in *Bartell v. Aurora Public Schools*, 263 F.3d 1143 (10th Cir. 2001), where we considered whether plaintiff's assertion that he was the victim of "selective, purposeful discrimination by government officials who harbor animosity towards [him]" states a claim under the Equal Protection Clause.  *Id.* at 1148.  In concluding that it did, we held that a plaintiff must show that "the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' [him] for reasons wholly unrelated to any legitimate state objective."  *Id.* at 1149 (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)).  In other words, a plaintiff must not merely allege that the government acted out of animus or spite, but also must assert that the government treated him differently from similarly situated citizens and that no rational basis existed for such differential treatment.  *Id; see also Jennings v. Stillwater*, 383 F.3d 1199, 1209–11 (10th Cir. 2004).

13

Here, the Marinos do not specifically allege that the sheriff defendants treated them differently from similarly situated landowners. The basis of their equal protection claim appears only to be that the sheriff defendants violated their legal obligation to enforce the restraining orders against Mayger and Hiemer because of personal animus. Therefore, although the magistrate judge found "it is a close question whether the Second Amended Complaint alleges facts to support an equal protection claim," Recommendation at 30, we conclude that the absence of an allegation of disparate treatment is fatal to the Marinos' claim. *See Jennings*, 383 F.3d at 1213 (dismissing plaintiff's equal protection claim in part because "she failed to make an adequate showing that similarly situated persons were treated differently") (citations omitted).

Furthermore, even assuming the Marinos alleged sufficient facts showing disparate treatment, the sheriff defendants are nevertheless immune to suit on this claim because the law was not clearly established when the alleged violation occurred. *See Herring v. Keenan*, 218 F.3d 1171, 1178–80 (dismissing claim because the law at issue was not clearly established at the time of the alleged violation). In *Norton v. Village of Corrales*, 103 F.3d 928, 933–34 (10th Cir. 1996), we held that an equal protection claim based on allegations of selective discrimination was not clearly established for the purposes of qualified immunity. *Norton* was decided in 1996, at least a year before the challenged conduct occurred

14

in this case.[5]  No post-*Norton* decision from the Supreme Court or this circuit suggested that an equal protection claim for selective discrimination had become clearly established by the time the conduct in this case occurred.  In fact, it was not until its *Olech* decision—which was decided in 2000—that the Supreme Court specifically considered whether the Equal Protection Clause gives rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in class or group.  528 U.S. at 564–65.  Nor can we say that the challenged governmental conduct was not so "obviously egregious" in light of "prevailing constitutional principles" that defendants had fair notice that their actions were unconstitutional.  *See Pierce*, 359 F.3d at 1298.  Therefore, we conclude that defendants are entitled to qualified immunity on this claim.

## 2.  Substantive Due Process

The Marinos argue that the acts and omissions of the sheriff defendants created the danger that Mayger or Hiemer would seriously injure them.  According to the Marinos, the sheriff defendants acted jointly with the Maygers and Hiemer to deprive Michael Marino of his constitutional right to be free from attempted

---

[5] The Montrose County District Court entered the permanent restraining order against the Maygers and Heimer in September 1997.  The assault on Michael Marino occurred in April 1998.

15

murder, physical abuse, assault, battery, and serious bodily injury.[6]  The magistrate

judge treated the Marinos' allegation as a Fourteenth Amendment substantive due

process claim, as do we.

Generally, state actors have no affirmative duty to protect individuals against

harm by third parties.  *DeShaney v. Winnebago County Dep't of Social Servs.*, 489

U.S. 189, 197 (1989).  However, this court has recognized two exceptions to the

rule that state actors are generally not liable for acts of private violence:  (1) the

special relationship doctrine and (2) the "danger creation" theory.  *Uhlrig v.*

*Harder*, 64 F.3d 567, 572 (10th Cir. 1995).  "A special relationship exists when the

state assumes control over an individual sufficient to trigger an affirmative duty to

provide protection to that individual."  *Id.* (citing *DeShaney*, 489 U.S. at 199–200).

Under the danger creation theory, state officials can be liable for the acts of third

parties where those officials "created the danger" that caused the harm.  *Armijo v.*

*Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir. 1998) (citations

omitted).  The Marinos assert their claim under this latter theory.

To support a substantive due process claim based upon the danger creation

---

[6] They also allege that the defendants deprived Danette Marino of her constitutionally-protected right to be free from fear of those injuries.  However, Danette Marino has no constitutionally-protected liberty interest in being free from emotional trauma suffered as a result of observing the assault on her husband.  *See Archuleta v. McShan*, 897 F.2d 495, 498 (10th Cir. 1990).

theory, a § 1983 plaintiff must demonstrate that

> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Ruiz v. McDonnell*, 299 F.3d 1173, 1182–83 (10th Cir. 2002). Further, "this state-created danger doctrine necessarily involves *affirmative conduct* on the part of the state in placing the plaintiff in danger." *Id.* at 1183 (emphasis added) (quotation and citation omitted).

Here, the Marinos allege that defendants Waterman and Hill "authorized and encouraged" Mayger and Hiemer to inflict serious bodily injury on Michael Marino. They allege that defendant Hill issued Mayger a concealed weapon permit, knowing that the situation was volatile and that someone could get hurt, and that Waterman "directed" Hiemer to violate the restraining order by permitting him to dig the ditch across the Marinos' property. They further allege that Mayger and Hiemer did everything Waterman and Hill told them to do and that Waterman and Hill participated in Hiemer's and Mayger's attempts to provoke Michael Marino through verbal confrontations and trespasses.

In dismissing the Marinos' claim, the magistrate judge concluded,

17

> Even assuming that Sheriff Hill put plaintiff at risk of serious and immediate harm by issuing Mayger a concealed weapons permit, the risk of harm was that Mayger might shoot Michael Marino with a gun, not that Hiemer would assault plaintiff with a shovel. It cannot be reasonably inferred that Hill's issuance of a concealed weapon permit to Mayger created the danger that Hiemer would assault plaintiff with a shovel. Further, Hill's statement that Mayger and Hiemer did everything that Hill and Waterman told them to do is too vague to support a reasonable inference that Hill and Waterman directed Hiemer to physically attack the plaintiffs.

Recommendation at 15.

We agree with the magistrate judge's analysis and conclude that the Marinos have failed to allege a viable substantive due process claim under the danger creation theory. The Marinos have alleged no facts that demonstrate affirmative conduct on the part of the sheriff defendants that created or increased the danger that Francis Hiemer would assault Michael Marino on April 5, 1998. "Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183. No such conduct has been alleged here. *See Graham v. Independent Sch. Dist. No. I-89,* 22 F.3d 991, 995 (10th Cir. 1994) (finding lack of an allegation of affirmative conduct fatal to plaintiff's substantive due process claim).

Further, even if sufficient affirmative conduct had been alleged, the ultimate

18

measure of whether conduct by state actors violates due process is whether "the challenged government action 'shocks the conscience' of federal judges." *Ruiz,* 299 F.3d at 1183 (citing *Uhlrig*, 64 F.3d at 573). We consider the following three factors in making such a determination: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Id.* at 1184. "These factors counsel that application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances." *Id.* (citation and quotation omitted). Lastly, "[w]e have noted that ordinary negligence does not shock the conscience, and that even permitting unreasonable risks to continue is not necessarily conscience shocking[.] Rather, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (quotations and citations omitted).

While we agree that the sheriff defendants' alleged conduct in this case, if accurately portrayed, was inconsistent with what we expect from public officials, we cannot conclude that their actions were so egregious or fraught with unreasonable risk as to "shock the conscience." To the extent that Hill, Waterman, and Hiler permitted a potentially volatile situation to persist, we do not believe their cumulative inaction rises above the level of negligence. Nor do we believe

19

that the sheriff defendants created the danger that Michael Marino would be assaulted by Francis Hiemer with a shovel on that particular day. Therefore, because the Marinos have failed to allege affirmative conduct that shocks the conscience, we conclude that the district court properly dismissed the Marinos' substantive due process claim.

### 3. Fourth Amendment Right To Be Free From Unreasonable Searches

Next, the Marinos contend that defendant Hiler violated their Fourth Amendment right to be free from unreasonable searches by intentionally making false statements and material omissions in his search warrant affidavit.

"To impeach an otherwise valid warrant on the ground that it was issued on specified information that was false and critical to the finding of probable cause requires proof that the affiant seeking the warrant knew that the challenged information was false or that he had a reckless disregard for its truthfulness." *Beard v. Northglenn*, 24 F.3d 110, 114 (10th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). "Allegations of negligence or innocent mistake are insufficient." *Id.* (quotation omitted). This standard applies to an officer's decision "to omit from his warrant affidavit information in his possession that is also critical to the showing of probable cause." *Id.*

The primary defect with the Marinos' Fourth Amendment claim is that they have failed to adequately allege that the sheriff defendants knowingly or recklessly

20

gave false information in obtaining the warrant. *Cf. Snell v. Tunnell*, 920 F.2d 673, 699–700 (10th Cir. 1990) (holding that plaintiffs had pled a Fourth Amendment claim under § 1983 because they showed "specific evidence" that officers had knowingly fabricated allegations of wrongdoing in obtaining a warrant). Although the Marinos claim that Hiler made false statements regarding the thoroughness of MCSD deputies' search of the crime scene and the location of a discovered piece of video camera, neither allegation impugns the integrity of the affiant in this case. A review of Hiler's search warrant affidavit demonstrates that his basis for probable cause was finding a piece of video camera near the Marinos' residence and a considerable distance from the location of the assault, and the improbability that Mayger or Hiemer dropped it there as they left the scene. Further, Hiler stated in his affidavit that he believed Danette Marino may have lied about finding a piece of the camera on the grass the day after the assault because the area was searched by deputies the previous day. He concluded that the reasonable inference to be drawn from those facts was that the Marinos' residence should be searched.

The Marinos also argue that Hiler omitted information from the affidavit that contradicts the private defendants' statements that Michael Marino was struck only once, as well as information regarding the possibility that the video camera had been thrown in the ditch. However, the first challenged omission is not critical to the probable cause finding in this case. Moreover, in terms of the second claimed

21

omission, the affidavit contains a description of Hiler's interview with Michael Marino in which Marino states his belief that the camera may have been thrown in the ditch. *See* Addendum of Exhibits to Aplt. Opening Br., II App. at Tab 19 ¶ 10. Thus, information regarding this possibility was in fact before the judge issuing the search warrant.

Because the Marinos have not demonstrated that Hiler omitted any of these facts in reckless disregard of the truth or omitted information that was critical to a probable cause finding, we conclude that no Fourth Amendment violation has been alleged.

### 4. Waived Claims

In her recommendation, the magistrate judge construed the Marinos' complaint as stating procedural due process claims based on the deprivation of the Marinos' property interest in the enforcement of the restraining orders. She also construed the Marinos' complaint as asserting a claim that they were denied their First Amendment right of access to the courts. She ultimately found that the sheriff defendants were entitled to qualified immunity on both of these claims. *See* Recommendation at 17, 35–36.

In their objections to the recommendation, the Marinos state that the recommendation "resolved claims that are not in the Complaint (such as procedural due process, right of access and failure to protect)." *See* II Aplt. App. at 333–34;

22

Order at 2. Not surprisingly, therefore, the Marinos failed to object to the magistrate judge's findings on the procedural due process or right of access claims.

"This circuit has 'adopted a firm waiver rule' which 'provides that the failure to make timely objection to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" *Engberg v. Wyoming*, 265 F.3d 1109, 1119 (10th Cir. 2001) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). In this case, the Marinos not only failed to object to the magistrate judge's recommendation on their procedural due process and right of access claims, but they also disclaimed any intent to bring such claims in the first place. Accordingly, we conclude that the Marinos abandoned their procedural due process and First Amendment right of access claims in the district court.[7]

### 5. Summary

The Marinos have failed to allege that the sheriff defendants violated any of their clearly established constitutional rights. Accordingly, defendants Hill, Waterman and Hiler are entitled to qualified immunity on these claims. *Albright v.*

---

[7] Regarding the First Amendment claim, in their briefing to this court the Marinos characterize their claim as one of discriminatory treatment in retaliation for exercising their First Amendment right of access to the courts. According to the Marinos, the sheriff defendants subjected them to hostile and discriminatory treatment because the Marinos had sought redress against the Maygers and Hiemer. Aplt. Opening Br. at 42. The Marinos' retaliation claim is therefore properly framed as a claim for violation of equal protection, which we have addressed *supra* at section II.B.1.

*Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

## C. Section 1983 Conspiracy

Although typically "[t]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity," *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595 (10th Cir. 1999), a plaintiff may assert the necessary state action for § 1983 by implicating state officials in a conspiracy with private defendants. As we stated in *Dixon v. Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), "[a] § 1983 conspiracy claim may arise when a private actor conspires with state actor to deprive a person of a constitutional right under color of state law."[8] *Id.* at 1449. In order to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.*; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). In pleading conspiracy, a plaintiff must allege "specific facts showing agreement and concerted action among [the alleged co-conspirators]." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). Thus, a plaintiff

---

[8] "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Dixon*, 898 F.2d at 1449 n.6 (citations omitted).

24

fails to state a claim for conspiracy absent specific facts showing a "meeting of the minds" among the alleged co-conspirators. *See Hunt*, 17 F.3d at 1268.

In this case, all of the Marinos' constitutional claims are premised on the allegation that the sheriff defendants conspired with the Maygers and Hiemer to drive them out of the community. This conspiracy claim is the linchpin by which the Marinos hope to impute the private defendants' tortious or criminal conduct to the public defendants. However, we previously determined that the Marinos failed to establish a deprivation of any constitutional right. Therefore, their § 1983 conspiracy claim must also fail. In addition, the Marinos' complaint is unsupported by specific facts showing an agreement among the alleged co-conspirators to drive the Marinos out of the community. Accordingly, we affirm the district court's dismissal of the claims against Sprague Mayger, Nancy Mayger, and Francis Hiemer.

### D. Liability of MCSD

"A [§ 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Watson v. Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) (citations omitted). In addition, a plaintiff seeking to recover damages in an official capacity suit, or in a suit against a department of a governmental entity, must look to the governmental entity alone for payment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, the Marinos' claims

25

against the MCSD and the individual sheriff defendants in their official capacities are construed as claims against Montrose County.

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citations omitted). If no underlying constitutional violation by a municipal employee exists, the claims against the county must be dismissed. *Id.*

We previously dismissed the Marinos' § 1983 claims against the sheriff defendants, in their individual capacities, for failure to allege a constitutional violation. Accordingly, the § 1983 claims against Montrose County and against Waterman, Hill and Hiler in their official capacities are properly dismissed for failure to state an underlying constitutional deprivation.

### E. Amendment of the Complaint

Following the magistrate judge's issuance of her recommendation, the Marinos filed a combined Motion for Leave to Amend Second Amended Complaint and Objections to Recommendation of United States Magistrate Judge. (II App. at 315–498) The Marinos' motion to amend was largely based on "newly discovered evidence" gleaned from a deposition of Heimer taken on June 2, 2000. The district

court denied the motion to amend on multiple grounds.  First, it noted that the Marinos had failed to tender a third amended complaint.  Second, it concluded that it would be unfair to allow the Marinos to amend their complaint in response to the magistrate judge's adverse recommendation, particularly after the Marinos had chosen to stand on the allegations in their second amended complaint.  Third, the court found the additional allegations gleaned from defendant Hiemer's June 2, 2000 deposition constituted inadmissible hearsay.  We review the district court's denial of a motion to amend for abuse of discretion. *See Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

On appeal, the Marinos argue that the district court erred in denying their motion to amend.  They argue that Hiemer's deposition testimony constitutes an admission of a party opponent as to the existence of a conspiracy.  Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if made by a co-conspirator "during the course and in furtherance of the conspiracy."  A co-conspirator statement is made "during the course" of the conspiracy if it is made before "the objectives of the conspiracy have either failed or been achieved." *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) (quoting Advisory Committee Notes to Rule 801(d)(2)(E)).

Hiemer's deposition was taken more than two years after the events at issue had concluded.  The Marinos offer no evidence that the alleged conspiracy

27

continued past the date of Michael Marino's assault, or, more importantly, that it has continued during Hiemer's term in prison. Because it appears that the objectives of the alleged conspiracy had failed by June 2, 2000, Hiemer's deposition testimony given on that date constitutes inadmissible hearsay.[9] The district court did not abuse its discretion.

## F. State Law Tort Claims

Finally, we conclude the district court did not abuse its discretion in dismissing the Marinos' pendent state law tort claims. *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998) (decision not to exercise supplemental jurisdiction reviewed for abuse of discretion) *overruled on other grounds by Styskal v. Weld County Comm'rs*, 365 F.3d 855 (10th Cir. 2004). The supplemental jurisdiction statute provides,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The statute also states that a district court may decline to

---

[9] As the district court noted, Hiemer's statements may be admissible as admissions *against Hiemer*. *See* Fed. R. Evid. 801(d)(2)(A). But here, the Marinos sought to use Hiemer's statements as evidence of a conspiracy between Hiemer, the Maygars, and the sheriff defendants. (II App. 320) Hiemer's admissions are inadmissible for this purpose. *See* Order at 4.

exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* subsection (c)(3). Such is the case here. Accordingly, we perceive no abuse of discretion.

### III. CONCLUSION

The Marinos have failed to state a claim upon which relief can be granted. Therefore, the district court's order dismissing the Marinos' action is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge