**Sandy MEADOWS, et al.**

v.

**Bob ODOM, et al**

**No. CIV.A. 03–960–B–2.**

United States District Court,
M.D. Louisiana.

March 3, 2005.

Clark Neily, William H. Mellor, Institute for Justice, Washington, DC, Scott D. Wilson, Scott D. Wilson, APLC, Baton Rouge, LA, Michael R. Fontham, Stone, Pigman, Walther, Wittmann, LLC, New Orleans, LA, for Plaintiffs.

David S. McFadden, C. James Gelpi, Clark A. Richard, Gelpi and Associates, New Orleans, LA, for Defendants.

1.  Plaintiffs' Motion for Summary Judgment, Rec. Doc. No. 41; Defendants' Motion for Summary Judgment, Rec. Doc. No. 45.

2.  356 F.Supp.2d 639 (M.D.La.2005).

3.  The Court has dismissed plaintiffs' privileges or immunities claim in a previous Ruling. Rec. Doc. No. 71.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the parties' cross-motions for summary judgment.[1] For the reasons which follow, defendants' motion for summary judgment is GRANTED, and plaintiffs' motion for summary judgment is DENIED.

### I.  Factual Background

The Court has previously set forth the factual background in an earlier opinion and will adopt these factual findings by reference herein.[2]

The issue the Court must determine on the pending motions is whether the right to pursue one's chosen occupation is protected by the Fourteenth Amendment Equal Protection Clause and the Substantive Due Process Clause.[3]

### II.  Law & Analysis

#### A.  Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

4.  Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

proof at trial."[5] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[6] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[7]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[8] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[9] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[10] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[12]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[13]

## B. The right to pursue the "common occupations of life" is a protected liberty interest, subject to reasonable regulation.

■ The right to pursue the "common occupations of life" is a protected liberty interest, subject to reasonable limitations. In *Blackburn v. City of Marshall*,[14] the Fifth Circuit stated that,

[W]here not affirmatively restricted by reasonable laws or regulations of general application, private individuals normally have the right to engage in private employment or any of the common occupations of life with or for those private persons who see fit to engage, patronize, or do business with them.[15]

In *Payne v. Fontenot*,[16] this Court noted that, "[a]lthough the Fifth Circuit has not

**5.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**6.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (*quoting Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2552).

**7.** *Little, supra* at 1075.

**8.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**9.** *Little, supra* at 1075; *Wallace, supra* at 1047.

**10.** *Wallace, supra* at 1048 (quoting *Little, supra* at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

**11.** *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

**12.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**13.** *Id.* at 248, 2510, 106 S.Ct. 2505.

**14.** 42 F.3d 925 (5th Cir.1995).

**15.** *Id.*, at 941.

**16.** 925 F.Supp. 414 (M.D.La.1995).

explicitly defined the contours of that right, it is clear that the state may require certain standards of qualifications before it permits a person to practice a given trade or profession." [17] With regard to the reasonableness of regulating professions, this Court has held:

It is only required that any qualification have a rational connection with (1) the applicant's fitness or capacity to serve in that trade or profession and (2) an arguably legitimate state interest in regulating that trade or profession.[18] If a state can and does choose to regulate a given occupation in a particular manner, it may also be required to provide notice and opportunity to be heard pursuant to the minimum requirements of procedural due process,[19] and of course, it must not be defamatory in its application of the standards.[20]

The Court now turns to discussion of the applicable jurisprudence and the facts of this case.

## C. Applicable Jurisprudence

Plaintiffs argue that floristry is a harmless occupation which should not be licensed by the State of Louisiana. Defendants contend that in *Williamson v. Lee Optical Of Oklahoma*,[21] the U.S. Supreme Court found that a state is not required to regulate all professions and occupations in order to regulate some professions and occupations. Nor do the professions and occupations have to be regulated in the same manner.

In *Williamson*, plaintiffs sought to have an Oklahoma law declared unconstitutional and enjoin state officials from enforcing the law which regulated optometrists or ophthalmologists. The district court found certain portions of three sections of the law at issue unconstitutional.[22] The district court concluded that certain portions of the act violated the due process clause by arbitrarily interfering with the optician's right to do business.[23]

The United States Supreme Court reversed the district court and found the law constitutional. The Supreme Court noted that, "[t]he Oklahoma law may exact a needless, wasteful requirement in many cases. **But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement.**" [24] While the Supreme Court acknowledged that in some cases the optician could easily supply new frames or lenses without reference to an old prescription, the Court held that,

[I]n some cases the directions contained in the prescription are essential, if the

---

**17.** *Id.*, at 422, (*citing Schware v. Bd. of Bar Exams. of N.M.*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957)). (Other citations omitted).

**18.** *Id.*, at 422–23, *citing Schware*, 353 U.S. at 239, 77 S.Ct. at 756; *Dixon*, 527 F.Supp. at 720.

**19.** *Id.*, at 423, *citing Phillips*, 711 F.2d at 1222–23 & n. 5.

**20.** *Id.*, *citing Paul v. Davis*, 424 U.S. 693, 708–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Dennis v. S & S Consol. Rural High School Dist.*, 577 F.2d 338 (5th Cir.1978).

**21.** 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

**22.** These sections made it unlawful for "any person not a licensed optometrist or ophthalmologist to fit lenses to a face or to duplicate or replace into frames lenses or other optical appliances, except upon written prescriptive authority of an Oklahoma licensed ophthalmologist or optometrist." *Id.*, at 485, 75 S.Ct. at 463.

**23.** *Id.*, 75 S.Ct. at 464.

**24.** *Id.*, at 487, 75 S.Ct. at 464. (Emphasis added).

glasses are to be fitted so as to correct the particular defects of vision or alleviate the eye condition. The legislature might have concluded that the frequency of occasions when a prescription is necessary was sufficient to justify this regulation of the fitting of eyeglasses. Likewise, when it is necessary to duplicate a lens, a written prescription may or may not be necessary. But the legislature might have concluded that one was needed often enough to require one in every case.[25]

Thus, the Court found that, **"the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."** [26]

The Court [27] further stated that, "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." [28]

The district court in *Williamson* had also held that the regulation violated the Equal Protection Clause by subjecting opticians to this regulatory system and exempting all sellers of ready-to-wear glass-es. In reversing the district court, the Supreme Court held:

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions or proportions, requiring different remedies. Or so the legislature may think. *Tigner v. State of Texas,* 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler v. Oregon State Board of Dental Examiners,* 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. **The legislature may select one phase of one field and apply a remedy there, neglecting the others.** *A.F. of L. v. American Sash Co.,* 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch.[29]

Finally, the Supreme Court found that because "[g]eographical location may be an important consideration in a legislative program which aims to raise the treatment of human eye to a strictly professional

---

25. *Id.*

26. *Id.,* at 488, 75 S.Ct. at 464. (Emphasis added).

27. The Court also noted that in *Munn v. State of Illinois,* 94 U.S. 113, 134, 4 Otto 113, 24 L.Ed. 77 (1876), " 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.' " *Williamson,* at 488, 75 S.Ct. at 465. (Emphasis added).

28. *Id.,* (citing *Nebbia v. People of State of New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed.

703; *Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n,* 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305; *Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal Co.,* 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212; *Daniel v. Family Sec. Life Ins. Co.,* 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632; *Day–Brite Lighting, Inc. v. State of Missouri,* 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469.).

29. *Id.,* at 489, 75 S.Ct. at 465. (Emphasis added).

level, we cannot say that the regulation has no rational relation to that objective and therefore is beyond constitutional bounds." [30]

*Marusic Liquors, Inc. v. Daley* [31] is also relevant to the Court's discussion of applicable jurisprudence. In *Marusic*, a liquor licensee brought a § 1983 action against city-related defendants, challenging that a statute that froze the transfer of liquor licenses to non-relatives on the grounds the statute violated Equal Protection and Due Process. [32] The plaintiff sought to be relieved of the restrictions on the sale of his license and store.

Addressing the Equal Protection and Due Process Clauses, the Seventh Circuit Court of Appeals held:

Not since the *Slaughter–House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872), has it been seriously maintained that the fourteenth amendment curtails the states' power to restrict competition in business—if they choose, by establishing and limiting systems of occupational licensure. **The** *Slaughter–House Cases,* **dispatch any argument that the privileges and immunities clause entitled persons to conduct business free of regulation** (there, of exclusion, for the state set up a monopoly). *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), **repeats the lesson for the equal protection clause.** [33]

Thus, "[a]t the same time that the Supreme Court was withdrawing from using the Due Process Clause to review economic regulation, **it determined that the Fourteenth Amendment's Equal Protection Clause did not guarantee that all economic legislation must treat all business equally."** [34] The Supreme Court's decision in *City of New Orleans v. Dukes* [35] was the first of this line of cases.

In *Dukes,* the Supreme Court upheld a New Orleans ordinance that prohibited pushcart vendors from selling their wares in the French Quarter. The ordinance contained a grandfather clause which allowed all licensed vendors who had continuously operated the same business for eight years or more to continue selling. The ordinance terminated the plaintiff's business in the area but did not affect others who were protected by the grandfather clause. The Supreme Court held that the ordinance was a purely economic regulation. The Court also noted that when local economic regulation is challenged solely as a violation of the Equal Protection Clause, "this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations." [36]

The Court further held:

Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be ra-

**30.** *Id.,* at 491, 75 S.Ct. at 466.

**31.** 55 F.3d 258 (7th Cir.1995).

**32.** *The plaintiff also argued that the statute* took his property without just compensation and amounted to a bill of attainder.

**33.** *Id.* (Citations omitted)(Emphasis added).

**34.** Markus Rüssli, "CONSTITUTIONAL PROTECTION OF ECONOMIC LIBERTIES IN SWITZERLAND AND THE UNITED STATES," 18 Tul.Euro.Civ. LF 39, 53 (2003) (Emphasis added).

**35.** 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

**36.** *Id.,* at 305, 96 S.Ct. at 2516.

tionally related to a legitimate state interest. **States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.** Legislatures may implement their program step by step, *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), in such economic areas adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e.g. *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).[37]

The Supreme Court was careful to emphasize that, "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." [38]

In upholding the ordinance, the Court found that the city's classification "rationally furthers the purpose which the Court of Appeals recognized the city had identified as its objective in enacting the provision," which was " 'to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists." ' [39] The Court continued that, "[t]he legitimacy of that objective is obvious." [40]

■■■■ It is important to note that the Meadows plaintiffs do not base their Equal Protection claim on the ground that they have been treated differently than similarly situated applicants who passed the

exam. Instead, the Meadows plaintiffs claim that they are similarly situated to all potential "would-be" professionals in any non-regulated industry, profession, or occupation. It is clear from the jurisprudence that so-called "would-be florists" are not similarly situated to other "would-be" professionals of non-regulated professions for the purposes of Equal Protection. The law is clear that state legislatures may choose which industries, professions, or occupations require regulation and to what degree they should be regulated within each industry, profession, or occupation without violating the Equal Protection Clause.

The Meadows plaintiffs rely heavily on the Sixth Circuit's decision in *Craigmiles v. Giles* to support their claim.[41] In *Craigmiles*, proprietors of two independent casket stores sued state officials under § 1983, alleging that the Tennessee Funeral Directors and Embalmers Act's (TFDEA) prohibition on the sale of caskets by anyone not licensed as a funeral director violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[42]

The *Craigmiles* plaintiffs alleged that the Act violated the Due Process, Equal Protection, and Privileges and Immunities clauses of the Fourteenth Amendment by restricting the sale of caskets, urns, and other funeral merchandise to licensed funeral directors. The district court held that the Act violated the due process and equal protection clauses, but rejected the privileges and immunities claim.[43]

---

37. *Id.,* 96 S.Ct. at 2517. (Emphasis added).

38. *Id.,* at 304, 96 S.Ct. at 2517.

39. *Id.,* 96 S.Ct. at 2517.

40. *Id.*

41. 312 F.3d 220 (6th Cir.2002).

42. In order to be a "funeral director" under this Act, and thus being permitted to sell caskets, required an applicant to undergo two years of education and training. *Id.,* at 222.

43. *Id.*

The Sixth Circuit found that when a statute does not distinguish people on the basis of strict scrutiny or intermediate scrutiny, the statute is subject to "rational basis" review, "requiring only that the regulation bear some rational relation to a legitimate state interest." [44] The court concluded: [45]

> Even foolish and misdirected provisions are generally valid if subject only to rational basis review. As we have said, a statute is subject to a "strong presumption of validity" under rational basis review, and we will uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis." *Walker v. Bain,* 257 F.3d 660, 668 (6th Cir.2001). *See also Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).... Our standards for accepting a justification for the regulatory scheme are far from daunting. A profferred explanation for the statute need not be supported by an exquisite evidentiary record; rather **we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data."** *FCC v. Beach Communications,*

*Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).[46]

The Sixth Circuit found that, "[c]ourts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." [47] The *Craigmiles* court then noted that, "[o]nly a handful of provisions have been invalidated for failing rational basis review.[48] We hold that this case should be among this handful." [49] The *Craigmiles* court was firm in its ruling that there was "no rational relationship between public health and safety and the purpose for which the act was passed." [50]

The *Craigmiles* decision was expressly rejected by the Tenth Circuit in a case which involved the same profession. Thus, in *Powers v. Harris,*[51] the Tenth Circuit considered a case brought by casket sellers who sought to sell caskets through the Internet without obtaining licenses as required by Oklahoma law. The plaintiffs sought a declaratory judgment declaring the Oklahoma Funeral Services Licensing Act unconstitutional in violation of the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Four-

**44.** *Id., citing Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

**45.** The district court ruled that the requirement of licensure as a funeral director for casket retailers was "not even rationally related to a legitimate governmental purpose" and was only designed for the economic protection of funeral home operators. *Id.*

**46.** *Id.,* at 224. (Emphasis added).

**47.** *Id.* (*citing City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)("Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected."). *See also H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 537–38, 69

S.Ct. 657, 93 L.Ed. 865 (1949); *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interests")).

**48.** *Id.* (*See Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522 (6th Cir.1998)).

**49.** *Id.*

**50.** *Id.*

**51.** 379 F.3d 1208 (10th cir.2004).

teenth Amendment.[52] The district court dismissed plaintiffs' suit and the Tenth Circuit affirmed.

The *Powers* Court noted that, "[h]ornbook constitutional law provides that if Oklahoma wants to limit the sale of caskets to licensed funeral directors, the Equal Protection Clause does not forbid it." [53]

The *Powers* plaintiffs operated an Oklahoma corporation which sold funeral merchandise over the Internet. It did not offer any other death or funeral-related merchandise, had nothing to do with disposition of human remains, and was not licensed by Oklahoma as a funeral establishment.

The *Powers* court addressed plaintiffs' claims that the law violated the Due Process and Equal Protection clauses. Plaintiffs claimed that the law violated, " 'the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose.' " [54] Plaintiffs

further contended, as a matter of Equal Protection, that the law was unconstitutional because the Board was arbitrarily treating similarly-situated people in a different manner.[55]

The Tenth Circuit held that, "[a]s a state economic regulation that does not affect a fundamental right and categorizes people on the basis of a non-suspect classification, we determine whether the FSLA passes constitutional muster, **both as a matter of substantive due process and equal protection, by applying rational-basis review.**" [56] The court also found that: [57]

> The Equal Protection and Due Process clauses protect distinctly different interests. On the one hand, the "substantive component" of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), even when the chal-

**52.** The Oklahoma Funeral Services Licensing Act ("FSLA") and Board rules promulgated pursuant thereto provided a regulatory scheme for the funeral industry in the state. Under the FSLA, any person engaged in the sale of funeral-service merchandise, including caskets, had to be a licensed funeral director operating out of a funeral establishment. Oklahoma did not apply this licensing requirement to those who sell other funeral-related merchandise, like urns, grave markers, monuments, clothing, and flowers. Further, because the Board distinguished between time-of-need and pre-need sales, the licensing requirement did not apply to all casket sales. *Id.*, at 1212.

**53.** *Id.*, at 1211, *citing Fitzgerald v. Racing Assoc. of Cent. Iowa*, 539 U.S. 103, 109, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003)(holding that the Equal Protection Clause does not prohibit Iowa's differential tax rate favoring the intrastate racetrack over the intrastate riverboat gambling industry); *Ferguson v. Skrupa*, 372 U.S. 726, 732–33, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) ("If the State of Kansas

wants to limit debt adjusting to lawyers, the Equal Protection Clause does not forbid it.").

**54.** *Id.*, *quoting Dent v. West Virginia*, 129 U.S. 114, 121, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

**55.** *Id.*, at 1215.

**56.** *Id.* (*See Fitzgerald*, 539 U.S. at 107, 123 S.Ct. 2156) (equal protection); *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)(substantive due process).(Emphasis added).

**57.** The court noted that, although the Plaintiffs urged violations of both Due Process and Equal Protection clauses, "their challenge is most properly presented as an equal protection claim, ... and that **the Court itself has most often analyzed regulatory challenges under the equal protection rubric.**" The court continued that, "because a substantive due process analysis proceeds along the same lines as an equal protection analysis, **our equal protection discussion sufficiently addresses both claims.**" *Id.* (Emphasis added).

lenged regulation affects all persons equally. In contrast, "the essence of the equal protection requirement is that the state treat all those similarly situated similarly." *Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir.2001)(quotations omitted), with it's "central purpose [being] the prevention of official conduct discriminating on the basis of race [or other suspect classifications,]" *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). As such, equal protection only applies when the state treats two groups, or individuals, differently.[58]

To satisfy the rational basis test, the *Powers* Court held that a regulation need only be " 'rationally related to a legitimate government purpose.' "[59] The relevant question before the Court was whether the licensure scheme was rationally related to the state's proffered consumer protection interest.[60]

In rejecting the Equal Protection claim and setting forth the standards of the judicial review of economic regulation, the *Powers* court stated:

In *United States v. Carolene Products Co.*, 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), the Court held, pursuant to rational basis review, that when legislative judgment is called into question on equal protection grounds **and the issue is debatable, the decision of the legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it." Second-guessing by a court is not allowed.** *Id.; see also Beach Communications*, 508 U.S. at 313, 113 S.Ct. 2096, 124 L.Ed.2d 211

("[E]qual protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)(per curiam)("The judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . .").

**Further, rational-basis review does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question.** *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 378, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). In fact, **we will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish,** *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966), *abrogated on other grounds by Healy v. Beer Inst., Inc.*, 491 U.S. 324, 342, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989), or because the statute's classifications lack razor-sharp precision, *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Nor can we overturn a statute on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

Finally, "because we never require a legislature to articulate its reasons for enacting a statute, **it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually moti-**

---

**58.** *Id.*

**59.** *Id., quoting Save Palisade FruitLands v. Todd,* 279 F.3d 1204, 1210 (10th Cir.2002)(Emphasis added).

**60.** *Id.*

vated the legislature." *Beach Communications*, 508 U.S. at 315, 113 S.Ct. at 2096 (citations and quotations omitted). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it[.]' " *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)); *see also McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) . . . As such, we are not bound by the parties' arguments as to what legitimate state interests the statute seeks to further. In fact, "this Court is *obligated* to seek out other conceivable reasons for validating [a state statute.]" *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 146 (1st Cir.2001) (emphasis added). Indeed, that the purpose the court relies on to uphold a state statute "was not the reason provided by [the state] is irrelevant to an equal protection inquiry." *Id.* (citing *Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096.) [61]

The *Powers* court also noted that only three courts have held, "in the absence of a violation of a specific constitutional provision or a valid federal statute, that 'protecting a discrete interest group from economic competition is not a legitimate governmental purpose.' " [62] Furthermore, the *Powers* court concluded that,[63] "[b]ecause the four Supreme Court cases collectively cited by *Craigmiles* and *Santos* do not stand for the proposition that intrastate economic protectionism, absent a violation of a specific constitutional provision or federal statute, is an illegitimate state interest, we cannot agree." [64]

The *Powers* court also found that other cases relied upon by the *Craigmiles* court were distinguishable:

> As such, these passages do not support the contention espoused in *Craigmiles* and *Santos* that **intrastate economic protectionism, absent a violation of a specific federal statutory or constitutional provision, represents an illegitimate state interest.** Our country's constitutionally enshrined policy favoring a national marketplace is simply irrelevant as to whether a state may legitimately protect one intrastate industry as against another when the challenge to the statute is purely one of equal protection.[65]

The *Powers* court noted, "the Supreme Court has consistently held that protecting or favoring one particular intrastate industry, absent a specific federal constitutional or statutory violation, is a legitimate state interest." [66] Thus, the court concluded:

**61.** *Id.*, at 1216–17. (Emphasis added).

**62.** *Id.*, at 1218, *quoting Craigmiles*, 312 F.3d at 224; *see also Cornwell*, 80 F.Supp.2d at 1117 (implying, without citation, that establishing a cartel for cosmetology services is not a legitimate state interest); *Santos v. City of Houston*, 852 F.Supp. 601, 608 (S.D.Tex.1994)(holding that "economic protectionism in its most glaring form . . . [is] not legitimate.").

**63.** The *Powers* court criticized the *Craigmiles* decision for citing the U.S. Supreme Court decision of *H.P. Hood & Sons, Inc. v. DuMond*, in support of its ruling. The *Powers*

court pointed out that, "when read in context, *H.P. Hood & Sons'* admonition is plainly directed at state regulation that shelters its economy from the larger national economy, i.e. violations of the 'dormant' Commerce Clause." *Powers*, 379 F.3d at 1219.

**64.** *Id.*, at 1218–19.

**65.** *Id.*, at 1219–20, *citing Metropolitan Life Ins. Co. v. W.G. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985)(quotation omitted). (Emphasis added).

**66.** *Id.*, at 1220 (*See Fitzgerald*, 539 U.S. at 109, 123 S.Ct. 2156; *Ferguson*, 372 U.S. at

"[b]ecause we find that intra-state economic protectionism, absent a violation of a specific federal statutory or constitutional provision, is a legitimate state interest, we have little difficulty determining that the FSLA satisfies rational-basis review." [67]

The *Powers* court set forth the basis for its disagreement with the Sixth Circuit's decision in *Craigmiles*, stating, "[o]ur disagreement can be reduced to three points. First, as noted by the District Court, *Craigmiles'* analysis focused heavily on the court's perception of the actual motives of the Tennessee legislature.[68] The Supreme Court has foreclosed such an inquiry." [69] Second, the court noted that the *Craigmiles* court "held that 'protecting a discrete interest group from economic competition is not a legitimate governmental purpose.' As discussed above, we find this conclusion unsupportable." [70] Third, the court found that, "in focusing on the actual motivation of the state legislature and the state's proffered justifications for the law," the court relied upon case law [71] which constituted a "marked departure from 'traditional' rational-basis review's prohibition on looking at the legislature's actual motives,[72] and our obligation to forward every conceivable legitimate state interest on behalf of the challenged statute." [73]

After carefully reviewing the jurisprudence on this issue, this Court agrees with the decision rendered in *Powers v. Harris*. This Court believes that *Powers* was decided in accordance with established Supreme Court precedents. Thus, this Court will rely on the *Powers* decision in deciding the issues in the case now pending before the Court.

The Court now turns to a more detailed discussion of the Act and the specific issues and facts which are the subject of the cross motions for summary judgment.

**D. Is the Louisiana Horticulture Commission's licensing exam for the floral retail industry rationally related to a legitimate government interest?**

■■ Louisiana does require an individual who wishes to engage in the floral retail industry to be licensed or work with someone who is licensed. In order for an act or regulation to pass the rational review test, the professional licensing qualifications must have a rational connection with (1) the applicant's fitness or capacity to serve in that trade or profession, and (2)

---

730–31, 83 S.Ct. 1028) ("It is now settled that States have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law.")(quotations omitted); *Dukes*, 427 U.S. at 304 n. 5, 96 S.Ct. 2513 ("[T]hese principles ... govern only when no constitutional provision other than the Equal Protection Clause itself is apposite. Very different principles govern even economic regulation when constitutional provisions such as the Commerce Clause are implicated, or when local regulation is challenged under the Supremacy Clause as inconsistent with relevant federal laws or treaties.").

67. *Id.*, at 1222.

68. *Id.*, at 1223, *citing Craigmiles*, 312 F.3d at 227 (quotation omitted).

69. *Id.*

70. *Id.*, *quoting Craigmiles*, 312 F.3d at 224; *see Fitzgerald*, 539 U.S. at 109–110, 123 S.Ct. 2156 (quotation omitted).

71. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

72. *Powers*, 379 F.3d at 1223 (*see Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096).

73. *Id.* (*See e.g. Starlight Sugar*, 253 F.3d at 146).

an arguably legitimate state interest in regulating that trade or profession.[74]

Plaintiffs argue that there is no rational relationship between the retail floristry licensing scheme and the purported government interests. The defendants contend that states have a legitimate interest in setting reasonable standards and requiring a reasonable level of qualification before permitting a person to practice certain trades or professions. Defendants also contend that the state of Louisiana has a legitimate government interest in regulating the licensing of retail florists for the purpose of public welfare and safety, consumer protection, and the enhancement of industry reputation.[75]

Defendants also argue that there is clearly a rational relationship between the Louisiana floral licensing examination and the government's interest in regulation of this occupation because it measures the skill and knowledge of an aspiring florist, and it tends to improve the quality of the retail florists in Louisiana. Defendants contend that, "[b]y encouraging education and study, [the] Louisiana testing program tends to automatically raise the quality of entry-level florists in the state." [76]

Applying the two-part test previously set forth above to the facts of this case, the Court finds that the legislation mandating the retail floral licensing examination is rationally related to a legitimate government interest. It is clear that the examination has a connection with the "applicant's fitness or capacity to serve in that trade or profession." The examination is composed of two parts, written and prac-

tical, and is open to anyone who chooses to apply. Applicants are given materials to study in preparation for the exam, and the exams are graded anonymously by established, licensed florists.

Although the plaintiffs contend they are only challenging the right of the state to license the florist occupation and are not challenging the fairness of the examination or the manner in which it is given, they do complain about certain portions of the written and practical tests. Since these complaints are not based on constitutional grounds, the Court will not discuss plaintiffs' complaints and will only address the constitutional challenge to the right of the state to require a licensing exam.

The evidence in this case clearly shows Louisiana has rational and legitimate reasons to require those who wish to engage in the floral industry to pass a test. This evidence supports the Court's finding that there are no violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

The Court specifically finds that the retail floral licensing examination does test the applicant's fitness or capacity to serve in this trade or profession. The Court also find that the licensing examination is rationally related to the proffered government purposes.

Plaintiffs have argued that the government's asserted interest in public health and safety is not rationally related to the florist licensing scheme because it is uncommon for persons to be injured by improperly assembled floral arrangements.

---

74. *Payne v. Fontenot, supra.*

75. The defendants note that Ralph Null, the plaintiffs' own expert, has acknowledged that "floristry is a profession that plays a role in many of the important events in the lives of potential consumers, such as birth, marriage, and death." Summary of Arguments in Sup-

port of Defendants' Dispositive Motions, p. 3, Rec. Doc. No. 68 (citing the Deposition of Ralph Null, pp. 41–42).

76. Memorandum in Support of Defendants' Motion for Summary Judgment, p. 15, Rec. Doc. No. 46.

Plaintiffs argue that "people handle millions of unlicensed floral arrangements around the world every year without being harmed." [77] However, the evidence in the record does reveal and support Louisiana's concern for the safety and protection of the general public. For example, Ben Knight, the Retail Florist for the State of Louisiana, testified as follows:

I believe that the retail florist does protect people from injury, the public and their own people. We're very diligent about not having an exposed pick, not having a broken wire, not have a flower that has some type of infection, like, dirt that remained on it when it's inserted into something they're going to handle, and I think that because of this training, that prevents the public from having any injury. [78]

The fact that other states may not choose to regulate a particular industry does not foreclose Louisiana from regulating that industry. The Court finds that the decision of the State of Louisiana to regulate the floral industry and to license those engaged in the industry by administering a floral licensing examination is rationally related to the state's desire that floral arrangements will be assembled properly in a manner least likely to cause injury to a consumer and will be prepared in a proper, cost efficient manner. Thus, the Court finds that the examination is rationally related to the government interest of public welfare and safety.

Plaintiffs also contend that unlicensed florists are allowed to work in floral establishments under the supervision of a licensed florist but many assemble arrangements that are not always totally supervised by the licensed florist. Thus, plaintiffs argue there is no legitimate government interest involved because unlicensed florists work on their own at times. However, this argument is without merit. The fact that a licensed florist is, at some level, responsible for the product which leaves a particular business establishment gives greater recourse to dissatisfied customers. The licensed florist is held responsible and accountable for the work of the florists in their employ, and the licensed florist is potentially subject to losing his or her retail license in the event the floral establishment does not comply with the standards set forth by the Louisiana Horticulture Commission. It cannot be said that simply because a licensed florist does not individually supervise every particular arrangement which leaves the establishment, the license requirement should be held unconstitutional.

■ Plaintiffs have also challenged the government's asserted interest in enhancing the reputation of the retail floral industry. While defendants have presented other rational reasons for the challenged legislation, the jurisprudence discussed above establishes that industry protectionism as a goal of such legislation does not invalidate it. [79] Thus, a state's intent to

---

**77.** Summary of Plaintiffs' Memorandum in Support of Summary Judgment Motion, p. 4, Rec. Doc. No. 67, (citing Exhibit 14.1, Declaration of Ralph Null, Professor Emeritus of Retail Floral Design at Mississippi State University).

**78.** Deposition of Ben Knight, p. 70, lines 23–25, p. 71, lines 1–8.

**79.** The *Dukes* case, discussed previously, is a perfect example of the Supreme Court up-

holding legislation which sought to protect "the charm and beauty of the historic and tourist area" of the French Quarter by denying licenses to future pushcart vendors while "grandfathering" those vendors who had been operating in the French Quarter for eight or more years previously. The Court noted that, "to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists" was a legitimate objective. *Dukes*, at 304–305, 96 S.Ct. at 2517.

enhance the floral industry through the challenged legislation is a legitimate government interest which is rationally related to a floral examination requiring licensed florists be qualified in their field.

This Court takes seriously the Supreme Court's admonition that "when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if 'any state of facts either known or which could reasonably be assumed affords support for it.' **Second-guessing by a court is not allowed.**"[80] This Court will not second-guess the legislature's intent to protect consumers and the floral industry alike with the challenged legislation.[81]

### III. Summary and Conclusion

The Court finds, based on the long-standing jurisprudence discussed above, that the regulation of the retail florist industry does not violate either the Equal Protection Clause or the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution under the facts of this case.

Therefore:

IT IS ORDERED that defendants' motion for summary judgment be granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment be denied.

IT IS FURTHER ORDERED that judgment be entered dismissing plaintiffs' case with prejudice.

---

80. *Powers, supra.,* at 1216–1217. (Emphasis added).

81. The Court will defer to those officials in charge of this industry the decision on whether to change or modify the content of the current two-part examination.